**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**Wheeling**

**JAMES A. MARTIN,**

        Plaintiff,

**v.**

                                                **Civil Action No. 5:22-cv-22**
                                                Judge Bailey

**UNITED STATES OF AMERICA**

        Defendant.

## REPORT AND RECOMMENDATION

### I.    INTRODUCTION

On February 4, 2022, the plaintiff initiated this case by filing a *pro se* complaint pursuant to the Federal Tort Claims Act ("FTCA").   This matter is before the undersigned for an initial review and report and recommendation pursuant to Local Rule of Prisoner Litigation Procedure 2 ("LR PL P 2") and 28 U.S.C. § 1915(e)(2).

### II.    THE COMPLAINT

The plaintiff's complaint involves events he alleges occurred at FCI Hazelton and USP Hazelton from December 24, 2019 through February 12, 2020.   More specifically, he alleges that at approximately 7:00pm at FCI Hazelton he was involved in a gang strip search of his cell.   Based upon the search, he informed a staff member that he was going to file a "PREA."   [Doc. 1 at 6].   He asserts that he was thrown in the SHU in retaliation from December 24, 2019 until he was "illegally shipped" to USP Hazelton on February 6,

2020. [Id.].   During this time, he asserts that he was not given his blood pressure medication and was refused "any medical attention."   [Id.].   However, he does state that he was taken to receive medical attention after allegedly pushing the emergency help button for several days.

In his second claim, he alleges the same fact pattern as above, but alleges that the correctional officers working December 24, 2019 until February 6, 2020 committed "blatant acts of abuse" with malicious intent and reckless endangerment for failure to provide medical attention.   [Doc. 1 at p. 6-7].

In his third claim, he alleges that he was denied his blood pressure medication and he had a heart attack.

In his fourth claim, he alleges that on February 5, 2020, he was discharged from the hospital to FCI Hazelton.   At FCI Hazelton, he told the correctional officer that he wanted to file a "PREA" before "they kill me and I don't get the chance."   [Doc. at 8].   He states that the next day he was shipped to USP Hazelton to "continue to retaliate" against him.   [Id.].   In addition, he asserts that on February 12, 2020, his leg gave out and he fell backwards and hit his head on the concreate.   He states that the correctional officers "ripped" his pants trying to make him stand up, and then they let him go so that he hit his head on the floor.   [Id.].   Then, the correctional officer "took the heel of his boot" and put it in the "crack" of his buttocks and then kicked him as hard as he could.   [Id.].   During this time, he asserts that the correctional officers harassed him by telling him that the officer was going to take him into the holding cells and let inmates rape him while he was strapped down.   He asserts the correctional officers also refused to cover his exposed

buttocks.   He stated that the nurse told him that his blood pressure was high, and the doctor would see him, but instead the officers wheeled him back to his cell and left him without medical care.

Finally, in his fifth claim, he alleges that on February 19, 2020, he passed out when he got up to use the bathroom.   He alleges the correctional officers handcuffed him and then slapped him, punched him, kicked him, and took the butt of a gun to beat him in the head.   He stated that they continued to punch and kick him until he was unconscious. He asserts that the officers then cracked the mace balls and put them to his nose and eyes until his nose started to bleed.

Finally, he alleges that he has been sexually assaulted, sexually battered, sexually harassed, kicked, beat, stomped, maliciously attacked by correctional officers and medical staff, retaliated against, and denied due process and adequate medical care. For what he alleges are violations of BOP policy, he seeks $4,500,000.00, plus lawyer and medical fees.   He also seeks to have charges brought against any correctional officers and medical staff members that were working in his vicinity during the periods alleged.

The Complaint was left blank regarding the filing of a Form SF-95 for the FTCA claim.

On April 18, 2022, the Court directed plaintiff to file copies of the SF-95 remedy form he filed, along with the response he received.   [Doc. 15 at 1].

On May 27, 2022, plaintiff responded to [Doc 15] by indicating that he did not file an SF-95; but instead, he filed BP-8's, 9's, and 10's.   As attached to the complaint,

plaintiff filed a BP-299 "Federal Correctional Complex Hazelton Request for Administrative Remedy Informal Resolution Form – Non General Population" on April 22, 2020.   [Doc. 1 at 11].   Prior to this filing, he was informed that he was to "attempt information resolution" through his counselor.   [Doc. 1 at p. 11].   In his Request, the section on "Part B" for the counselor efforts was left blank.   [Doc. 1 at 1].   He then filed a "Request for Administrative Remedy" on May 22, 2020.   [Doc. 1 at 12].   On October 1, 2020, he filed a BP-230 (13), a "Regional Administrative Remedy Appeal."   [Doc. 1 at 13].   On November 9, 2020, he filed a "Request for Administrative Remedy" U.S. Department of Justice Form #1056068-F1.   On November 9, 2020, Plaintiff filed a "Request for Administrative Remedy" case number 1056068-F1.   A response that the Request for case number 1056068-F1 was received and being investigated was sent on November 9, 2020.   [Doc. 1 at 9].   Plaintiff provides no indication that there was any decision, including a notice of final denial of the claim, in response to any of his filings.

## III.   <u>STANDARD OF REVIEW</u>

Because the plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court must review the complaint to determine whether it is frivolous or malicious.   Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous if it is without arguable merit either in law or in fact.

Neitzke v. Williams, 490 U.S. 319, 325 (1989).   However, the Court must read *pro se* allegations in a liberal fashion.   Haines v. Kerner, 404 U.S. 519, 520 (1972).   A complaint which fails to state a claim under Fed. R. Civ. P. 12(b)(6) is not automatically frivolous.   See Neitzke, 490 U.S. at 328.   Frivolity dismissals should only be ordered when the legal theories are "indisputably meritless,"[1]  or when the claims rely on factual allegations which are "clearly baseless."   Denton v. Hernandez, 504 U.S. 25, 32 (1992). This includes claims in which the plaintiff has little or no chance of success.   See Estelle v. Gamble, 429 U.S. 97, 106 (1976).

Because the plaintiff is proceeding *pro se*, this Court is required to liberally construe his complaint. Erickson v. Pardus, 551 U.S. 89 (2007). Moreover, *pro se* complaints are held to a less stringent standard than those drafted by attorneys. Id.: Gordeon v. Leeke, 574 F.2d 1147 (4th Cir. 1978), and federal district court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case. Highes v. Rowe, 449 U.S. 5, 9 (1980); Cruz v. Beto, 45 U.S. 319 (1972). When a federal court is evaluating a *pro se* complaint, the plaintiff's allegations are assumed to be true. Erickson, 511 U.S. at 93 (citing Bell v. Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)).

However, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. See Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990);

---

[1]  Id. at 327.

See also Ashcraft v. Iqbal, 556 U.S. 662 (2009) (outlining pleading requirements under Rule 8 of the Federal Rules of Civil Procedure for "all civil actions"). The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so; however, a district court may not rewrite a complaint to include claims that were never presented, Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999), construct the plaintiff's legal arguments for him, Small v. Endicott, 998 F.2d 411 (7th Cir. 1993) or "conjure up questions never squarely presented" to the court, Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

## IV.  ANALYSIS

The United States enjoys sovereign immunity except to the extent that Congress has waived such immunity.   The FTCA provides a limited waiver of sovereign immunity for "money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of an employee of the Government while acting within the scope of his office or employment . . . ."   28 U.S.C. § 2675(a).   Section 2674 of the Act further provides as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

28 U.S.C. § 2674.

In order to maintain a case against the United States under the FTCA, the plaintiff must demonstrate that his action is permissible under the FTCA and satisfies the necessary elements of a tort claim under state law.   It is a jurisdictional requirement that

the plaintiff in such a case file and exhaust an administrative claim prior to filing suit.   See 28 U.S.C. § 2675; see also Muth v. United States, 1 F.3d 246, 249 (4th Cir. 1993); Dupont v. United States, 980 F. Supp. 192, 195 (S.D. W. Va. 1997); Johnson v. United States, 906 F. Supp. 1100 (S.D. W. Va. 1995); McCoy v. U.S.P.S., 890 F. Supp. 529, 531–32 (S.D. W. Va. 1995); Hurt v. United States, 889 F. Supp. 248, 252 (S.D. W. Va. 1995).

The first step in the FTCA process is an administrative filing under

28 U.S.C. § 2675(a):

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or admission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of the claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. 2675(a). Under 28 U.S.C. 2401, the claim must be filed within two years of the occurrence or within six months after a final denial of the claim.

The BOP has adopted a Program Statement which explains, clearly and in detail, the procedure by which inmates may recover monetary damages for personal injuries sustained while in custody. Program Statement 1320.06 ("Federal Tort Claims Act"), Paragraph 7 ("Filing a Claim") describes the procedure for obtaining a Standard Form ("SF-95") and filing a claim. Among the items required on the SF-95 is a "sum certain" (i.e., a specific amount of money). This information is mandatory, as the United States Court of Appeals for the Fourth Circuit explained in Kokotis v. U.S. Postal Serv., 223 F.3d 275, 278-279 (4th Cir. 2000) (citations omitted):

An administrative claim must be properly presented. The FTCA's implementing regulations consider a claim to be properly presented when the government receives a completed SF 95 (or other written notification of an incident), and "a claim for money damages in a sum certain …" 28 CFR § 14.2(a) (1999) (emphasis added); *see also* 39 CFR § 912.5(a) (1999). Requesting a sum certain is a necessary element of any FTCA administrative claim. Failure to request a sum certain within the statute of limitation deprives a district court of jurisdiction over a subsequently filed FTCA suit. See Ahmed v. United States, 30 F.3d 514 (4th Cir.1994); Kokaras v. United States, 980 F.2d 20, 22 (1st Cir.1992); Adkins v. United States, 896 F.2d 1324, 1326 (11th Cir.1990).

Because the FTCA is a waiver of sovereign immunity, careful compliance with procedural requirements -- such as filing of the administrative claim—is not only mandatory but is also "jurisdictional and may not be waived." Henderson v. United States, 785 F.2d 121, 123 (4th Cir. 1986).

In the instant case, the plaintiff did not file an SF-95.   Moreover, even if the Court were to construe the plaintiff's BP-8, 9s, and 10's as an appropriate written notification of the incident to the BOP, none of them contain a request for a sum certain which is a necessary element of any FTCA administrative claim. The undersigned recognizes that the plaintiff is a *pro se* litigant, however his ignorance of the requirements of properly exhausting his administrative remedy for purposes of the FTCA is not a defense to dismissal. See Adeleke v. United States, 355 F.3d 144, 153 (2d Cir. 2004) (citing 28 U.S.C. § 2675(a)) ("a plaintiff must first file an administrative claim with the appropriate federal agency before suing for relief in federal court" and "[t]his procedural hurdle applies equally to litigants with counsel as to those proceeding *pro se*.").

## V.  RECOMMENDATION

In consideration of the foregoing, it is the undersigned's recommendation that the plaintiff's complaint under the FTCA be **DISMISSED WITHOUT PREJUDICE** because he

failed to properly exhaust his administrative claim thereby depriving this Court of jurisdiction.

Within fourteen (14) days after being served with a copy of this report and recommendation, the plaintiff may file with the Clerk of Court **specific written objections identifying those portions of the recommendation to which objection is made and the basis for such objections**. A copy of such objections should also be submitted to the United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to send a copy of this Report and Recommendation to plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket. In addition, because this Report and Recommendation completes the referral from the District Court, the Clerk is **DIRECTED** to terminate the Magistrate Judge associated with this case.

DATED: August 1, 2022

/s, James P. Mazzone
JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE